IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROUTE1 INC.,

     *Plaintiff/Counterclaim Defendant,*

     *v.*

AIRWATCH LLC, and VMWARE, INC.

     *Defendants/Counterclaim Plaintiffs.*

C.A. No. 17-331-KAJ

REDACTED - PUBLIC VERSION

---

**OPENING BRIEF IN SUPPORT OF AIRWATCH'S AND VMWARE'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285**

Dated:  October 28, 2019
Redacted Version: November 4, 2019
OF COUNSEL:

Michael A. Jacobs
Richard S. J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
(213) 892-5200
brahebi@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for AirWatch LLC and VMware, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION & SUMMARY OF THE ARGUMENT ............................................. 1

II.     FACTUAL BACKGROUND & NATURE AND STAGE OF THE
        PROCEEDINGS ................................................................................................... 2

        A.      The "Instruction" Limitation Requires a "Host-Initiated Connection." ............... 2

        B.      Route1 Secures Allowance Based on the "Host-Initiated Connection." ............... 3

        C.      ████████████████████████████████ .................................. 4

        D.      AirWatch Sends Its First *Octane* Letter Addressing Route1's First
                Infringement Theory. ............................................................................ 5

        E.      AirWatch Sends Second, Third, and Fourth Letters Flagging Deficiencies
                in Route1's Second Infringement Theory. ................................................. 5

        F.      AirWatch Sends a Fifth Letter Flagging Deficiencies in Route1's Third
                Infringement Theory and Reiterates Its Intent to Seek Its Fees. .................... 6

        G.      Route1 Expands Upon Its Third Infringement Theory. ................................. 8

        H.      AirWatch Sends a Sixth Letter in Response to Route1's New Fourth
                Infringement Theory. ............................................................................ 9

        I.      After AirWatch Sends its Seventh and Eighth Letters, It Prevails on
                Summary Judgment. ............................................................................. 10

III.    ARGUMENT ..................................................................................................... 10

        A.      Legal standards ................................................................................. 10

        B.      Route1's "Forging Ahead" with Shifting and Objectively Unreasonable
                Theories Warrants an Exceptional Case Finding. ....................................... 11

                1.      Route1 Wasted the Court's and AirWatch's Resources on an
                        Infringement Claim that It Knew Was Baseless. ............................. 12

                2.      Route1's Multiple Warning Letters Underscore the Exceptional
                        Nature of This Case. ................................................................. 14

        C.      Route1's Ultimate Construction of the "Instruction" Step Warrants an
                Exceptional Case Finding by Itself. ........................................................ 16

        D.      Route1's Litigation Approach Supports an Exceptional Case Finding. ............. 18

        E.      Route1's Litigation Imposed Significant Costs on AirWatch, Third Parties,
                and the Judicial System. ...................................................................... 19

IV.     CONCLUSION ................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3form, Inc. v. Lumicor, Inc.*,
  No. 2:12-cv-293, 2018 WL 4688348 (D. Utah Sept. 28, 2018) ...........................................11

*Andersen Mfg. Inc. v. Wyers Prods. Grp., Inc.*,
  No 18-cv-0235-WJM, 2019 WL 4007772 (D. Colo. Aug. 23, 2019) ...................................17

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  No. 12-256-RMB, 2015 WL 108415 (D. Del. Jan. 5, 2015) ......................................11, 12, 14

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
  No. 12-CV-04000-SC (JSC), 2014 WL 1340674 (N.D. Cal. Apr. 3, 2014)..........................18

*Cosmo Techs. Ltd. v. Actavis Labs FL, Inc.*
  No. 15-164-LPS, 2019 WL 1417459 (D. Del. Mar. 28, 2019).........................................13, 14

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
  706 F. App'x 666 (Fed. Cir. 2017) ......................................................................................18

*Intellect Wireless, Inc. v. Sharp Corp.*,
  45 F. Supp.3d 839 (N.D. Ill. 2014) ......................................................................................11

*Kilopass Tech., Inc. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013).............................................................................................11

*Kilopass Tech. Inc. v. Sidense Corp.*,
  No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014).................................12, 13

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012)...............................................................................................16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014).........................................................................................................10, 11

*Phigenix, Inc. v. Genentech, Inc.*,
  No. 15-cv-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) ................................14

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012).......................................................................................16, 17

*Segan LLC v. Zynga Inc.*,
  131 F. Supp. 3d 956 (N.D. Cal. 2015) ..................................................................................11

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013)......................................................................12, 13

*Thermolife Int'l LLC v. GNC Corp.*,
   922 F.3d 1347 (Fed. Cir. 2019)......................................................................14, 15

*Yufa v. TSI Inc.*,
   No. 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) .................12, 13, 14

## I.      INTRODUCTION & SUMMARY OF THE ARGUMENT

Dear [Counsel]:

Route1 Inc. ("Route1") has accused AirWatch LLC ("AirWatch") of infringing U.S. Patent No. 7,814,216 ("the '216 patent") through the operation of the AirWatch Enterprise Mobility Management System ("the accused AirWatch EMM System").  As evidenced by a review of your Complaint, Route1 had no basis to bring this action and has no basis to maintain it now.  Accordingly, this letter serves as notice that, unless Route1 promptly moves to dismiss all of its claims with prejudice, AirWatch intends to pursue all appropriate remedies, including by seeking an award of fees and costs at the conclusion of the case.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756-57 (2014) (holding that maintenance of objectively baseless claims warrants a fee award).  (Callahan Decl. Ex. 1 at 1.)

AirWatch wrote the preceding to Route1 over two years ago.  In fact, over the course of this litigation, AirWatch sent *eight* such letters.  But rather than dismiss its case, Route1 forged ahead.  It cycled through four different infringement theories involving the same "instruction" limitation, each more implausible than the last.

After moving for summary judgment, AirWatch sent Route1 its eighth and final letter:

It still is not too late for Route1 to do the right thing.  It should recognize the weaknesses in its infringement case . . . and dismiss this action with prejudice.  (*Id.* Ex. 17 at 1.)

Route1 still did not dismiss its action.  Instead, as the Court observed in granting summary judgment in AirWatch's favor, Route1 advanced a "remarkable," "illogical," and "opposite" claim construction that the "claim language at issue simply [could not] support" and that "attempt[ed] to evade its earlier representations" during prosecution.  (D.I. 274 at 11, 15.)

Having forced AirWatch to waste over ██████ defending against Route1's meritless claims, Route1 now should be required to compensate AirWatch.  The "exceptional case" designation under 35 U.S.C. § 285 was designed precisely for cases like this—to compensate the aggrieved defendant, and to deter future wasteful litigation.  As the prevailing party, AirWatch asks the Court to declare this case exceptional and award its reasonable attorney fees.

1

## II.     FACTUAL BACKGROUND & NATURE AND STAGE OF THE PROCEEDINGS

### A.     The "Instruction" Limitation Requires a "Host-Initiated Connection."

As the Court is well aware, the asserted '216 patent relates to a system by which a host computer can connect to a remote device by way of a trusted middleman, or "controller."  (*See* D.I. 1-1 ('216 patent) 1:45-55.)  Claim 1, the sole independent claim, recites a process in which the controller first verifies the identities of various remote devices and host computers.  When a verified remote device seeks to establish a peer-to-peer connection with a verified host, the remote device sends the controller its selection of the host to which it would like to connect.  The host then forwards the remote device's identifying parameters to the selected host.

The next step (the "instruction" step) recites: "sending an instruction, from the controller to the selected host, to establish a connection to the remote device."  In this step, the controller instructs the selected host to establish a connection to the remote device.

As the plain claim language of this step makes clear, the *host* must establish the connection to the remote device.  ('216 patent, claim 1.)  The language describes only a "host-initiated connection," and not a "remote-initiated connection."  As the Court noted, a contrary interpretation would "strip the word 'establish' of its plain and ordinary meaning" and be "illogical, absent contrary intrinsic evidence."  (D.I. 274 at 11.)

The specification makes doubly apparent that the host, and not the remote, establishes this connection.  As the Court observed, "[t]he specification teaches host-initiated connections and only such connections."  (*Id.* at 12.)  Referring to Figure 3A, the specification explains:

- "At step 420, remote 10 selects one of the hosts."  ('216 patent at 5:65-66.)

- "At step 525, controller 50 checks whether any parameters have been received for this host" and "forwards the parameters to the selected host."  (*Id.* at 6:61-66.)

- Finally, "[a]t step 335, host 60 sends a handshake to remote 10," such that

2

"remote 10 receives the handshake from host 60." (*Id.* at 7:7-16.)



(*Id.*, Fig. 3A (modification and emphasis added).)  The specification never teaches the contrary,

*i.e.*, the remote sending the handshake to, or otherwise establishing a connection with, the host.

### B.    Route1 Secures Allowance Based on the "Host-Initiated Connection."

As the Court also is well aware, the "instruction" limitation did not appear in the claims

by happenstance.  After five years of prosecution and five rejections, Route1 added this

limitation to overcome the Kiwimagi reference (U.S. Patent Application Publication No.

2005/0120204).  (D.I. 205 Ex. 5 ('216 Patent File History) at RT_344.)  When the Examiner

again rejected the claim, Route1 alleged that Kiwimagi was distinguishable because, in

Kiwimagi, the *remote* established the connection.  Route1 pressed this argument repeatedly:

> Claim 3 [issued claim 1] requires that ***the controller sends parameters for the remote <u>to the host</u>, and instructs <u>the host</u> to establish communication with the remote***.
>
> In contrast, Kiwimagi has its security host send parameters for the host ***<u>to the remote</u>***, so that ***<u>the remote</u>*** can establish communication with the host. . . .
>
> Kiwimagi fails to show . . . sending an instruction, from the controller to the selected host, to establish a connection to the remote.  Instead, Kiwimagi teaches that the remote takes the initiative to establish a connection to the host.

(*Id.* at RT_343 (emphasis in original).)

3

Per Route1, the "host-initiated" connection was the alleged point of novelty.  When
providing a "Summary of the Claimed Subject Matter," Route1 stressed:

> The present invention is a workaround that enables a remote computer to access a
> host computer where the host computer is behind a firewall.  In short, the remote
> tells the controller that it wishes to access the host, and ***the controller instructs
> the host to establish communication with the remote.***

(*Id.* at RT_335 (emphasis in original).)  The patent issued in 2010 after these representations.

**C.** 

In early 2017, Route1

(Callahan Decl. Ex. 2 at 28.)  Route1

(D.I. 205, Ex. 12 at 12.)  Route1 sought

(*Id.* at 13; Callahan Decl. Ex. 3 at 55:19-21.)

Route1 then sued AirWatch in March 2017.  (D.I. 1.)[1]  In its Complaint, Route1 initially

cited an AirWatch patent, U.S. Patent No. 8,713,646 (D.I. 1-6 ("the Stuntebeck '646 patent")), as

alleged proof that AirWatch's products met the "instruction" step.  (*Id.* ¶ 14 (citing 7:51-55).)

### D.   AirWatch Sends Its First *Octane* Letter Addressing Route1's <u>First</u> Infringement Theory.

Route1's first infringement theory for the "instruction" limitation was deficient from the

start.  The cited portion from the Stuntebeck '646 patent describes only the alleged controller

sending an access request to an alleged host; it makes no mention of a remote device.  In fact, the

very next line of the Stuntebeck '646 patent explains that the alleged host sends the resources

back to the alleged controller, not a remote.  (Stuntebeck '646 patent at 7:55-59.)

AirWatch immediately informed Route1 of this defect and of its intent to seek its fees if

Route1 did not withdraw the Complaint.  (Callahan Decl. Ex. 1 at 2.)  AirWatch emphasized the

"host-initiated" nature of the "instruction" limitation, citing the claim language and file history:

> The claims of the '216 patent all require "sending an instruction, from the
> controller to the selected host, to establish a connection to the remote device."
> (*See* '216 patent at 10:19-20 (claim 1).)  Route1 emphasized the significance of
> this limitation during prosecution of the '216 patent, where it distinguished prior
> art in which a remote device requested a connection with the host system.  (*See*
> Applicant Reply dated 8/05/2009 at 14 ("Kiwimagi ***teaches away*** from claim 3
> because claim 3 requires that the controller instruct the host to establish a
> connection to the remote, whereas Kiwimagi teaches that the remote client
> requests a connection directly from the host system.") (emphasis in original.)  The
> accused AirWatch EMM System does ***not*** have a controller that instructs a
> selected host to establish a connection to a remote device.  (*Id.*)

### E.   AirWatch Sends Second, Third, and Fourth Letters Flagging Deficiencies in Route1's <u>Second</u> Infringement Theory.

Despite AirWatch's identification of these deficiencies, Route1 did not withdraw its

---

[1] VMware acquired AirWatch in 2014, before Route1 filed suit.  On April 3, 2019, the parties
stipulated to join VMware as a defendant.  (D.I. 196.)  For purposes of this motion, Defendants
refer to VMware and AirWatch collectively as "AirWatch."

Complaint.   Instead, through its "Initial" Infringement Contentions, Route1 introduced a second, different infringement theory for the "instruction" limitation.  (Callahan Decl. Ex. 4 at 9.)  Under its AirWatch Cloud Messenger ("AWCM") theory, ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  (*Id.*)

Route1's new "AWCM" theory suffered from the same defect: the host did not establish a connection with a remote.  As its own document citations explained, the "ACC [*i.e.,* the alleged host] transmits outbound data from an organization's internal resources to the AWCM service." (D.I. 206, Ex. 34.)  Route1 did not allege that the AWCM service was a remote.

AirWatch thus sent Route1 three more letters and indicated its intent to seek its fees under *Octane*.  (Callahan Decl. Exs. 5-7.)  AirWatch specifically advised Route1 that there was "simply no colorable basis to presume that a mere 'request for data sent from the [purported controller]' somehow constitutes an actual 'instruction . . . to establish a connection to the remote,' as Route1 unreasonably contends in its Infringement Contentions."  (*Id.* Ex. 7 at 2.)

In responding to AirWatch's second letter, Route1 provided no proof that the ACC establishes any connection with any remote.  (*Id.* Ex. 8 at 3.)  Route1 ignored AirWatch's third and fourth letters entirely.

### F.    AirWatch Sends a Fifth Letter Flagging Deficiencies in Route1's Third Infringement Theory and Reiterates Its Intent to Seek Its Fees.

Eighteen months after filing its Complaint, Route1 served "Final Infringement Contentions" changing its infringement theory yet again.  The sum total of its explanation for its new "Exchange/SEG" infringement theory was as follows:

████████████████████████████████████████████████████



(Callahan Decl. Ex. 9 at 14 (citing four source code files without line pincites).)  Although

Route1's "final" contentions dropped its first infringement theory based on the Stuntebeck '646

patent, it retained its second AWCM theory.

But Route1's "Exchange/SEG" infringement theory (now its third) still did not satisfy the

"instruction" limitation, as its own citations again confirmed.  Rather than showing that the

alleged controller instructs the alleged host (*i.e.*, the Exchange Server) to establish a connection

to a remote, Figure 3 showed the arrow emanating *from* the remote to the alleged host (*id.* at 12):



AirWatch promptly sent Route1 a fifth letter pointing out Route1's continued

misapplication of the plain claim language:

> During prosecution of the '216 patent, Route1 confirmed that this limitation
> means that the instruction is for "the host to establish communication with the
> remote."  . . .  To the contrary, AirWatch managed devices at all times initiate
> communication to Exchange servers to retrieve emails.

(Callahan Decl. Ex. 10 at 3-4.)  AirWatch reiterated its intent to seek its fees.  After initially

ignoring AirWatch's fifth letter (*id.* Ex. 11), Route1 finally responded that it was not obligated to "prove its infringement case" at that juncture and offered no substantive response.  (*Id.* Ex. 12.)

### G.    Route1 Expands Upon Its Third Infringement Theory.

Implicitly acknowledging these ongoing defects in its infringement theories, Route1 served "Revised Final Infringement Contentions" on November 26, 2018.  Rather than clarify its positions, Route1's "revisions" (1) revived its first theory based on the Stuntebeck '646 patent and (2) pointed to a new AirWatch document (AIR31554) and another Stuntebeck patent, U.S. Patent No. 8,826,432 ("the Stuntebeck '432 patent"), as purportedly demonstrating infringement.

The newly cited AirWatch document explained that the Console (*i.e.*, the alleged controller) can direct the Secure Email Gateway or "SEG" (*i.e.*, the alleged host) to "whitelist" a device by adding it to a list of approved or authorized devices.  Per Route1, the document showed that ███████████████████████████████████████████████████████████

███████  (Callahan Decl. Ex. 13 at 26.)  As Route1's own citations explained, however, ████

████████████████████████████████████████████  (*Id.* (emphasis added).)

As for the newly cited Stuntebeck '432 patent, Route1 provided no evidence that the AirWatch products practiced it.  Nor did Route1 explain how it allegedly showed that any AirWatch host establishes a connection to a remote device.

Despite Route1's reliance on the two Stuntebeck patents as alleged evidence that AirWatch satisfied the "instruction" step, Erich Stuntebeck himself provided contrary testimony at his deposition four days later.  Dr. Stuntebeck, AirWatch's Director of Advanced R&D for End User Technologies, confirmed what AirWatch had been saying all along: that its products do not practice the instruction step.  As Dr. Stuntebeck explained, it is "not possible to make an inbound connection to a mobile device on most cellular networks."  (*Id.* Ex. 14 at 103:5-15.)  But

Route1 still did not withdraw its infringement claims.

**H.      AirWatch Sends a Sixth Letter in Response to Route1's New <u>Fourth</u> Infringement Theory.**

On January 7, 2019, Route1 served its opening expert report on infringement.  Its expert, Robert Akl, copied and pasted large portions of Route1's Revised Final Infringement Contentions concerning the "instruction" limitation into his report.  (*Compare* Callahan Decl. Ex. 13 at 25-26, *with* D.I. 205 Ex. 22 ¶¶ 127-28, 130.)

In doing so, he also introduced yet another infringement theory—this time involving Microsoft's "PowerShell" task-management framework.  (D.I. 205 Ex. 22 ¶ 129.)  At the same time, Dr. Akl dropped Route1's first two theories concerning the first Stuntebeck '646 patent and the AWCM, which had provided the original basis for Route1's initiation of this lawsuit.

Contrary to the plain claim language, both of Route1's remaining theories (involving Exchange/SEC and PowerShell) involved a remote-initiated connection.  On January 24, 2019, AirWatch again wrote Route1 to note its deficient infringement theories and its misreading of the "instruction" step as encompassing a remote-initiated connection.  (Callahan Decl. Ex. 15.)

Route1 did not deny its misreading.  Instead, on February 21, 2019, it served an expert report that *embraced* it.  Per Dr. Akl, ███████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████ (D.I. 206 Ex. 30 ¶ 31 (emphasis added).)  Dr. Akl also conceded that ███████████████████████████████████████████████████ ██████████████████████████████. (*Id.*)

On March 14, 2019, AirWatch asked the Court to resolve Route1's late-raised and improper construction of the "instruction" step.  (D.I. 191.)  On April 18, AirWatch also moved for summary judgment of non-infringement based on the same limitation.  (D.I. 199.)

9

**I.     After AirWatch Sends its Seventh and Eighth Letters, It Prevails on Summary Judgment.**

Before moving for summary judgment, AirWatch again asked Route1 to dismiss its case or risk an exceptional case finding and a fee award under *Octane.* (Callahan Decl. Ex. 16.) Route1 ignored the letter—AirWatch's seventh.

Two years to the day from its first *Octane* letter—and before the summary judgment hearing—AirWatch sent Route1 an eighth and final letter asking that Route1 withdraw its action:

> It still is not too late for Route1 to do the right thing.  It should recognize the weaknesses in its infringement case and with the '216 patent and dismiss this action with prejudice . . .  To avoid an exceptional case finding under 35 U.S.C. § 285 and an adverse attorney fees award against your client, please confirm that Route1 will dismiss this action with prejudice immediately.

(*Id.* Ex. 17.)  Route1 ignored this letter as well.

On August 7, 2019, the Court granted summary judgment in AirWatch's favor.  In its Opinion, the Court adopted the "much stronger" positions that AirWatch had been telling Route1 all along, *viz.*, (i) that the plain meaning of the "instruction" limitation did not allow Route1's "remote-initiated" construction, (ii) that the "prosecution history of the '216 patent preclude[d] the construction now sought by Route1," and (iii) that AirWatch's "remote-initiated" system cannot infringe. (D.I. 274 at 10-18.)

**III.     ARGUMENT**

**A.     Legal standards**

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  "[D]istrict courts [can] consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness

(both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citation and quotation marks omitted). An exceptional case is of a degree lower than a sanctionable one. *See id.* at 555. The standard of proof is a preponderance of the evidence. *See id.* at 557-58.

A case may be exceptional because of the strength of a litigation position or the unreasonable manner of litigation. *See id.* at 554. Bad faith or litigation misconduct is not required. *See 3form, Inc. v. Lumicor, Inc.*, No. 2:12-cv-293, 2018 WL 4688348, at *5 (D. Utah Sept. 28, 2018) ("no findings of inappropriate conduct," but case still exceptional where defendant's arguments were "objectively unreasonable"); *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 962-63 (N.D. Cal. 2015) ("[C]laim construction positions and infringement theory were so unreasonable as to make . . . case 'exceptional' within the meaning of section 285, even without reference to . . . litigation conduct."); *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 12-256-RMB, 2015 WL 108415, at *3 (D. Del. Jan. 5, 2015), *report and recommendation adopted in part*, No. CV 12-256-RMB, 2015 WL 1197436 (D. Del. Mar. 13, 2015) ("[B]ad faith is no longer required to support an award of fees").

"The purpose of Section 285 is not to punish the losing party, but rather, to compensate the prevailing party for the costs incurred due to the losing party's 'unreasonable conduct.'" *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp.3d 839, 848 (N.D. Ill. 2014) (citing *Octane*, 572 U.S. at 555); *see also Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur.").)

      **B.**    **Route1's "Forging Ahead" with Shifting and Objectively Unreasonable Theories Warrants an Exceptional Case Finding.**

"[A] party cannot assert baseless infringement claims and must continually assess the

11

soundness of pending infringement claims . . . ." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). Abandoning one unreasonable infringement claim "does not permit [a plaintiff] to maintain other infringement claims that fail to meet or exceed a reasonable threshold." *Id.* at 1329.

"[F]orging ahead" in the face of contrary evidence is "exceptionally meritless." *Bayer*, 2015 WL 108415, at *4 (finding case exceptional where, "as the litigation progressed and it became apparent that Bayer's case was going nowhere, Bayer insisted on forging ahead while it unsuccessfully searched for a theory to defeat Dow's license or contract defense.").

A plaintiff "shifting its theories of infringement late in the litigation" is another hallmark of an exceptional case. *See, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *13-*14 (N.D. Cal. Aug. 12, 2014) (finding exceptional case where plaintiff "decided to try a different theory at the expert discovery stage, hoping it would be better").

A plaintiff's "continued prosecution of [an] action [is] objectively unreasonable" when faced with an "absence of any evidence to support his claims before the Court, and in light of substantial and uncontroverted evidence indicating that the accused products [do] not infringe." *Yufa v. TSI Inc.*, No. 09-CV-01315-KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014). This is particularly so when the accused infringer "provide[s] Plaintiff with substantial discovery, including schematics of the accused products that indicated that the products" do not infringe, but plaintiff continues to prosecute its case. *Id.*

### 1.    Route1 Wasted the Court's and AirWatch's Resources on an Infringement Claim that It Knew Was Baseless.

Route1's "forging ahead" in the face of contrary evidence renders its case "exceptionally meritless." *Bayer*, 2015 WL 108415, at *4. The "objective baselessness of [Route1's] claims for literal infringement is supported by the fact that by the time the action reached the summary

judgment stage, [Route1] dropped" its two original theories.  *Kilopass*, 2014 WL 3956703, at

*10.  Route1 pressed those theories for almost two years, despite the lack of supporting evidence.

Route1's first theory relied on the Stuntebeck '646 patent, which describes a host

establishing a connection only to a controller, not a remote.  As for its "AWCM" theory, Route1

never explained how the alleged host (the ACC) establishes a connection with a remote.  From

the "absence of any evidence to support [its] claims" and the "substantial and uncontroverted

evidence indicating that the accused products did not infringe[,]" Route1's "continued

prosecution of this action was objectively unreasonable."  *Yufa*, 2014 WL 4071902, at *3.

It also was unreasonable for Route1 to introduce two more weak theories involving

Exchange/SEG and PowerShell eighteen months into the case.  "Although [Route1] was correct

(and required) to abandon any infringement claims that had no basis in fact or law, that

abandonment [did] not permit [Route1] to maintain other infringement claims that fail to meet or

exceed a reasonable threshold."  *Taurus*, 726 F.3d 1329.  Route1's "shifting [] theories . . . late in

the litigation" further confirms this case is exceptional.  *Kilopass*, 2014 WL 3956703, at *14.

The baselessness of Route1's infringement theories is highlighted by the fact that

Route1's expert never bothered to use—or even speak to someone who had used—the accused

products.  (D.I. 206 Ex. 24 at 32:13-23, 35:21-36:4.)  As in *Cosmo Techs. Ltd. v. Actavis Labs*

*FL, Inc.*, Route1 "never even bothered to provide samples of the products (which [it] had) to

Dr. [Akl], [its] primary infringement expert, at any time throughout the course of the litigation."

No. 15-164-LPS, 2019 WL 1417459, at *2 (D. Del. Mar. 28, 2019).  Such failure "is objectively

unreasonable and confirms the substantive weakness of Plaintiffs' claims of infringement."  *Id.*

Rather than rely on actual testing or usage to understand AirWatch's products, Route1

"built [its infringement case] upon contorted theories and conjectural conclusions that did not

13

trump reality and amounted to distraction." *Bayer*, 2015 WL 108415, at *4 (citation and quotation marks omitted). Instead of forging ahead with this litigation, "[t]he better and prudent course [for Route1] would have been to abandon the action." *Id.*; *see also Yufa*, 2014 WL 4071902, at *3 (finding case exceptional where, "[i]nstead of dismissing his lawsuit after reviewing [defendant's] discovery," plaintiff "relied solely on conclusory allegations of infringement"). Route1's repeated refusals to do so render this case exceptional.

## 2.    Route1's Multiple Warning Letters Underscore the Exceptional Nature of This Case.

"[O]ne consideration that can and often should be important to an exceptional-case determination is whether the party seeking fees provided early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) (quotation marks omitted.); *see also Cosmo*, 2019 WL 1417459, at *3 ("[T]he fact that Actavis repeatedly told Plaintiffs . . . that its product did not contain stearic acid . . . confirms the substantive weakness in Plaintiffs' infringement position."); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF, 2018 WL 3845998, at *6 (N.D. Cal. Aug. 13, 2018) ("[T]he parties' communications . . . squarely put Phigenix on notice . . . . As such, Phigenix was informed about the potential weakness in its case . . . .").

Here, AirWatch gave Route1 every opportunity to walk away. Over two years ago, AirWatch first put Route1 squarely on notice that AirWatch did not satisfy the "instruction" limitation. That letter, and the ones that followed, could not have been clearer:

- **June 7, 2017:** "[T]his letter serves as notice that, unless Route1 promptly moves to dismiss all of its claims with prejudice, Air Watch intends to pursue all appropriate remedies, including by seeking an award of fees and costs at the conclusion of the case. . . . The accused AirWatch EMM System does *not* have a controller that instructs a selected host to establish a connection to a remote device." (Callahan Decl. Ex. 1 (also discussing Kiwimagi and citing *Octane*).)

14

- **January 12, 2018:**  "[Route1's Initial Infringement Contentions] make a number of factual assertions that are incorrect and inconsistent with the evidence in this case. . . .  [They] provide no evidence of any ACC [t]raffic being communicated to the Managed Devices through the AWCM."  (*Id.* Ex. 5.)

- **February 9, 2018:**  "Route1's Infringement contentions . . . suffer from numerous deficiencies, including the failure to clearly set forth how [the 'sending an instruction' limitation is] allegedly met . . . .  As expressed in our [January 12] letter, [they] provide no evidence supporting its theory that ACC traffic is communicated to the Managed Devices through the AWCM."  (*Id.* Ex. 6.)

- **March 1, 2018:**  "AirWatch intends to pursue all appropriate remedies against Route1's baseless pursuit of the above-referenced litigation, including by seeking an award of fees and costs at the conclusion of the case.  *See Octane* . . . .  The components Route1 has identified as a controller do not send an instruction to a selected host to establish a connection to a remote device."  (*Id.* Ex. 7.)

- **October 15, 2018:**  "During prosecution of the '216 patent, Route1 confirmed that [the 'instruction'] limitation means that the instruction is for 'the host to establish communication with the remote.' . . . AirWatch reiterates its belief that Route1 has no reasonable basis for maintaining this lawsuit.  AirWatch intends to pursue its attorneys' fees from Route1 and its attorneys, whether under Rule 11 or 35 U.S.C. § 285."  (*Id.* Ex. 10.)

- **January 24, 2019:**  "AirWatch has long identified serious deficiencies in Route1's infringement case . . . .  Route1 has never plausibly explained how AirWatch's products satisfy claim 1's 'instructing' step. . . .  Route1 explained to the Patent Office that the 'instruction' must be for 'the host to establish communication with the remote.'"  (*Id.* Ex. 15.)

- **April 11, 2019:**  "AirWatch therefore again asks that Route1 immediately dismiss this action, with prejudice, to avoid further compounding the cost and prejudice to AirWatch.  If Route1 does not, its maintenance of this litigation in bad faith will subject it to an exceptional case finding and an award of attorneys' fees . . . .  Route1 still does not demonstrate how AirWatch's products satisfy the 'sending an instruction' and 'selection of the host" limitations."  (*Id.* Ex. 16.)

- **June 7, 2019:**  "It still is not too late for Route1 to do the right thing.  It should recognize the weaknesses in its infringement case and with the '216 patent and dismiss this action with prejudice.  Even at this late juncture, that remains the 'better and prudent course of action,' rather than 'forging ahead' with unsuccessful theories to try to defeat AirWatch's arguments."  (*Id.* Ex. 17.)

Despite this "early, focused, and supported notice of [AirWatch's] belief that it was being

subjected to exceptional litigation behavior," *Thermolife*, 922 F.3d at 1357, Route1 pressed on

with the litigation and in most instances simply ignored AirWatch's warning letters.  This confirms the exceptional nature of this case.

### C.      Route1's Ultimate Construction of the "Instruction" Step Warrants an Exceptional Case Finding by Itself.

"Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous.  But there is a threshold below which a claim construction is 'so unreasonable that no reasonable litigant could believe it would succeed,' and thus warrants" an exceptional case finding.  *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (quoting *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011)).

This may occur, for example, where the patentee's proposed construction is "contrary to all the intrinsic evidence and does not conform to the standard canons of claim construction."  *Id.* at 1369 (recommending attorney's fees "where no objectively reasonable litigant, relying on the single sentence in the specification to support its position, would believe its claim construction could succeed").  This also may occur where the patentee's construction includes scope that it specifically disavowed to secure allowance, *see MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 917-18 (Fed. Cir. 2012) (affirming fee award against patentee for accusing products with stents, which it disavowed during prosecution), or if the construction involves "one of the important features of the invention," *Raylon*, 700 F.3d at 1369.

All of these are true of Route1's construction of the "instruction" step here.  That limitation requires that the controller instruct the selected host "to establish a connection" with the remote.  (D.I. 274 at 11.)  As the Court observed, "the claim language at issue simply cannot support Route1's proposed meaning" encompassing "a remote-initiated connection."  (*Id.*)  "To say otherwise would strip the word 'establish' of its plain and ordinary meaning" and be "illogical, absent contrary intrinsic evidence . . . ."  (*Id.*)  But "the specification . . . describes

16

only a "host-initiated connection." (*Id.*)

Nor did the Court allow Route1 to "evade its earlier representations" to the Patent Office concerning the "instruction" limitation to secure allowance. (*Id.* at 14.) As the Court explained, "[d]uring prosecution, in response to a final rejection based on Kiwimagi, Route1 argued that Kiwimagi failed to teach certain limitations of the '216 patent." (*Id.* at 13.) Route1's assertions that the prosecution history did not "speak directly on this issue" or "distinguish[] [the] prior art based on [Kiwimagi's] remote-initiated connection" were "remarkable." (*Id.* at 15.)

Finally, there can be no doubt that the "instruction" limitation was "one of the important features of the [alleged] invention." *Raylon*, 700 F.3d at 1369. It arguably was *the* most important feature. When summarizing the invention for the Patent Office, Route1 both (a) identified the "instruction" limitation as the alleged point of novelty, and (b) highlighted that limitation's requirement that the *host* establish communication:

> The present invention is a workaround that enables a remote computer to access a host computer where the host computer is behind a firewall. In short, the remote tells the controller that it wishes to access the host, and ***the controller instructs the host to establish communication with the remote.***

(PH at RT_335 (emphasis in original).)

Route1's "illogical" and "remarkable" construction thus justifies an exceptional case finding. (D.I. 274 at 11.) "To state the argument"—that a host-established connection includes a remote-established connection—"is to reveal its absurdity." *Andersen Mfg. Inc. v. Wyers Prods. Grp., Inc.*, No 18-cv-0235-WJM, 2019 WL 4007772, at *7 (D. Colo. Aug. 23, 2019) (finding exceptional case where patentee's position was "objectively weak, and [plaintiff] knew as much from early in the case"). Route1's "opposite" claim construction (D.I. 274 at 11) is precisely the type of construction that is "so unreasonable that no reasonable litigant could believe it would succeed." *Raylon*, 700 F.3d at 1368.

### D.     Route1's Litigation Approach Supports an Exceptional Case Finding.

Although AirWatch does not rely on Route1's litigation conduct to justify an exceptional

case finding, Route1's approach to this litigation also would support such a finding.  To wit:

████████████████████████████████████████████

██████████████████████████████████   (Callahan Decl. Ex. 2 at 28;

D.I. 205 Ex. 12 at 12.)  *Cf. ICON Health & Fitness*, *Inc. v. Octane Fitness, LLC,* 706 F. App'x

666, 669 (Fed. Cir. 2017) (affirming exceptional case finding, in part, because filed suit "on an

'[o]ld patent . . . that was sitting on the shelf' as a way to get royalties").

<u>Attempted deposition of VMware's CEO:</u>  Presumably to exert settlement leverage,

Route1 attempted to depose Patrick Gelsinger, VMware's CEO.  Acting on Mr. Gelsinger's

behalf, AirWatch's counsel was forced to initiate parallel proceedings to quash Route1's

subpoena.  *See Gelsinger v. Route1, Inc.*, No. 5:18-mc-80199-SVK (N.D. Cal. Nov. 15, 2018).  It

was simply not credible for Route1 to expect that the CEO of a 24,000+ employee corporation

with $8+ billion in revenues would have "first-hand, non-repetitive knowledge of the facts" in

this case.  *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-SC (JSC),

2014 WL 1340674, at *2 (N.D. Cal. Apr. 3, 2014) (citation and quotation marks omitted).  Judge

Van Keulen in the Northern District of California ultimately quashed the subpoena.  *Gelsinger*,

No. 5:18-mc-80199-SVK (Dec. 12, 2018).

### E.   Route1's Litigation Imposed Significant Costs on AirWatch, Third Parties, and the Judicial System.

As detailed in the contemporaneously filed Hung, Vreeland, and Gaza declarations, AirWatch has paid its attorneys at Morrison & Foerster, WilmerHale, and Young Conaway Stargatt & Taylor ("Young Conaway") over ████████ in fees defending Route1's action. [2]

AirWatch asks that the Court award a portion of that amount, or ██████████

AirWatch's requested fees include work relating to ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████.

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

---

[2] Morrison & Foerster LLP substituted in for Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") as AirWatch's trial counsel in August 2018.  (Hung Decl. ¶ 2.)



Nor does it reflect the significant time that multiple AirWatch engineers, marketing and finance employees, legal team members, and executives devoted to preparing AirWatch's defenses and sitting for deposition.  Their time could have been spent on tasks like new product development, instead of countering Route1's meritless infringement claims.

Finally, these costs also do not account for the burden placed on this Court, the Northern District of California in connection with Mr. Gelsinger's motion to quash, or the burden on unrelated third party subpoena recipients (*e.g.*, Columbia University, KPMG, and GigaTrust).

## IV.    CONCLUSION

As Route1's four shifting infringement theories and "remarkable," "illogical," and "opposite" proposed claim construction make clear, it should never have brought this lawsuit. But after it did, it should have heeded at least one of AirWatch's eight letters explaining why its infringement allegations were baseless based on the same arguments that were ultimately successful on summary judgment.  Because Route1 should not have brought, prolonged, and multiplied this case, AirWatch asks that the Court enter an order that this case is "exceptional" and award AirWatch ██████████ for its reasonable attorney fees.

Dated: October 28, 2019

OF COUNSEL:                              YOUNG CONAWAY STARGATT &
                                         TAYLOR, LLP

Michael A. Jacobs
Richard S. J. Hung                       /s/  *Anne Shea Gaza*
MORRISON & FOERSTER LLP                  Elena C. Norman (No. 4780)
425 Market Street                        Anne Shea Gaza (No. 4093)
San Francisco, CA 94105                  Samantha G. Wilson (No. 5816)
(415) 268-7000                           Rodney Square
mjacobs@mofo.com                         1000 North King Street
rhung@mofo.com                           Wilmington, DE 19801
                                         (302) 571-6600
                                         enorman@ycst.com
Bita Rahebi                              agaza@ycst.com
MORRISON & FOERSTER LLP                  swilson@ycst.com
707 Wilshire Boulevard
Los Angeles, CA 90017                    *Attorneys for AirWatch LLC and VMware, Inc.*
(213) 892-5200
brahebi@mofo.com

01:25488693.1

21

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, Esquire, hereby certify that on November 4, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Dominick T. Gattuso
HEYMAN ENERIO GATTUSO
 & HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
*dgattuso@hegh.law*

*Attorneys for Plaintiff Route1 Inc.*

Michael J. Garvin
Marcel C. Duhamel
Aaron M. Williams
VORYS, SATER, SEYMOUR
AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, OH 44114-2327
*mjgarvin@vorys.com*
*mcduhamel@vorys.com*
*amwilliams@vorys.com*

William H. Oldach III
VORYS, SATER, SEYMOUR
AND PEASE LLP
1909 K Street NW
Washington, D.C. 20006-1152
*wholdach@vorys.com*

Rex W. Miller, II
VORYS, SATER, SEYMOUR
AND PEASE LLP
52 E. Gay Street
Columbus, OH 43215
*rwmiller@vorys.com*

*Attorneys for Plaintiff Route1 Inc.*

22018055.1

I further certify that on November 4, 2019, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel.


Dated: November 4, 2019

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

/s/ *Anne Shea Gaza*
Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for AirWatch LLC and VMware, Inc.*

22018055.1

2