IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROUTE1 INC., | ) | |
| | ) | |
| Plaintiff /Counterclaim Defendant, | ) ) ) | |
| | ) | |
| v. | ) ) | Civil Action No. 17-cv-331 (KAJ) |
| | ) | REDACTED PUBLIC VERSION |
| AIRWATCH LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

_____

MEMORANDUM OPINION
_____

Dominick T. Gattuso, Heyman Enerio Gattuso & Hirzel LLP, 300 Delaware Avenue, Ste. 200, Wilmington, DE 19801, *Counsel for Plaintiff and Counterclaim Defendant*
 Of Counsel: Michael J. Garvin, Marcel C. Duhamel, Aaron M. Williams, Vorys, Sater, Seymour and Pease, LLP, 200 Public Square, Ste. 1400, Cleveland, OH 44114
  William H. Oldach III, Vorys, Sater, Seymour and Pease, LLP, 1909 K Street N.W., 9th Fl., Washington, DC 20006
  Rex M. Miller, II, Vorys, Sater, Seymour and Pease, LLP, 52 E. Gay Street, Columbus, OH 43215

Elena C. Norman, Anne Shea Gaza, Samantha G. Wilson, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 198011, *Counsel for Defendant and Counterclaim Plaintiff*
 Of Counsel: Michael A. Jacobs, Richard S.J. Hung, Christopher J. Wiener, Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105
  Bita Rahebi, Morrison & Foerster LLP, 707 Wilshire Boulevard, Los Angeles, CA 90017

_____

March 31, 2020
Wilmington, Delaware

1

s/ Kent A. Jordan

JORDAN, *Circuit Judge sitting by designation*.

This suit by Route1 Inc. ("Route1") against AirWatch LLC ("AirWatch") asserted infringement of U.S. Patent No. 7,814,216 (the "'216 patent"). After I construed disputed claim language, I granted summary judgment in favor of AirWatch on the question of infringement. Though I denied summary judgment on AirWatch's invalidity counterclaim, the parties subsequently agreed to the dismissal of that counterclaim. (D.I. 274.) Presently before me is AirWatch's motion for attorneys' fees (D.I. 289), which I will grant in part.

## I. BACKGROUND

The parties are well aware of the background of this case, so I recite only those facts relevant to the motion at hand. As I explained in my August 7, 2019 memorandum opinion disposing of the infringement claim, "the technology described in the '216 patent is directed to a means for remote computing access, 'enabling peer-to-peer communication' between a host computer and remote device over a communication network. ('216 Pat. 1:7-10.) The '216 patent claims a method by which users of 'remote devices' can connect to 'hosts' through an interfacing component, a 'controller.' ('216 Pat. 1:46-56.)" (D.I. 274 at 2-3.)

Relevant to this motion and the motion for summary judgment that I granted is Step 1g, or the "instruction limitation," of claim 1 of the patent. That limitation states that the controller sends "an instruction from the controller to the selected host, to establish a connection to the remote device." ('216 Pat. 10:19-20.) From the filing of the

complaint until the motions for summary judgment were filed, Route 1 alleged several different infringement theories. The ones it finally settled on involved a remote-initiated connection to a host computer. (D.I. 274 at 17-18.) In support of those theories, Route1 served an expert report opining that the instruction limitation "may include a host-initiated connection, or a remote-initiated and host-accepted connection." (D.I. 218-3 ¶ 31.) Because the parties had conflicting views about the construction of the instruction limitation, I heard argument and considered the parties' briefing on that issue.

Ultimately, I rejected Route1's proposed construction and concluded that the instruction limitation "encompasses only host-initiated, not remote-initiated connections." (D.I. 274 at 9.) I based my conclusion on the claim language, the specification, and the prosecution history of the '216 patent. With respect to the claim language, I said that Route1's construction "that an instruction sent from the controller to the host somehow instructs the remote to establish the connection, when the remote has received no instruction" was "illogical[.]" (*Id.* at 11.) I then noted language from the specification stating that the "host … send[s] a handshake to [the] remote" ('216 Pat. 7:5-7), and the "remote … receives the handshake from [the] host" ('216 Pat. 7:14-15). With respect to the prosecution history, I stated that "Route1 cannot have it both ways. It is improper to secure issuance of claims by arguing that they are limited to host-initiated connections, only to turn around and argue in litigation that those claims are not so limited and to assert broad infringement theories." (*Id.* at 15.) Based on my construction of the instruction limitation, I granted summary judgment against Route1 because its

theories of infringement relied on remote-initiated, not host-initiated, connections. (*Id.* at 17-18.)

As detailed in my opinion granting summary judgment against Route1, I believe that, particularly by the time claim construction issues were being settled, Route1 had a weak case for infringement, and I am particularly troubled by the contradictory positions Route1 ultimately took at the PTO and before me. Route1 said one thing to secure issuance of the claims and then, later, said the reverse in litigation. Route1 secured patentability by arguing that, "unlike the '216 parent, [the prior art reference] 'Kiwimagi teaches that the remote *takes the initiative*[.]'" (*Id.* at 15.) Then, in litigation, Route1 argued the opposite, saying that the "prosecution says nothing about how the host establishes a connection to the remote, nor does the prosecution state—or suggest—that the host must somehow initiate a connection to the remote."

## II.    LEGAL STANDARD

Under § 285 of title 35 of the United States Code, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), the Supreme Court rejected the view that an "exceptional case" finding required that the losing litigant have either engaged in "some material inappropriate conduct related to the matter in litigation" or that "the litigation is brought in subjective bad faith, and … the litigation is objectively baseless." 572 U.S. at 550. The Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 554. The Supreme Court also clarified that the standard of proof to demonstrate that a case is "exceptional" is a preponderance of the evidence. *Id.* at 554, 557.

There are several ways in which litigants have shown that a case is "exceptional[.]" Those ways include:

> (1) establishing that the plaintiff failed to conduct an adequate pre-filing investigation or to exercise due diligence before filing suit; (2) showing the plaintiff should have known its claim was meritless and/or lacked substantive strength; (3) evidencing the plaintiff initiated litigation to extract settlements from defendants who want to avoid costly litigation; (4) showing a party proceeded in bad faith; and (5) litigation misconduct.

*Bayer CropScience AG v. Dow AgroSciences LLC*, No. 12-256(RMB.JS), 2015 WL 108415, at *3 (D. Del. 2015) (citations omitted).

The Federal Circuit has explained that the "purpose behind § 285 is to prevent a party from suffering a 'gross injustice'" and that "[t]he exercise of discretion in favor of awarding attorney fees should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration ... which makes it grossly unjust that the winner ... be left to bear the burden of his own counsel fees." *Checkpoint Sys., Inc. v. All–Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (alterations and quotations omitted). A court should not award fees "as a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 549.

**III. DISCUSSION**

In light of the totality of the circumstances, Route1's conduct over the final course of this case qualifies, in my judgment, as exceptional.

First, Route1's proposed construction of the instruction limitation was contradicted by the claim language and specification of the instruction limitation. Although "a strong or even correct litigation position is not the standard by which we assess exceptionality," *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018), Route1's construction was more than just weak. It was illogical, as I described in my order on granting summary judgment against Route1. (D.I. 274 at 11.)

Although that illogical claim construction might be insufficient alone to establish that this is an exceptional case, what does tip Route1's case into the exceptional category is the contradictory positions it took before the PTO in prosecution and then before me in litigation. As explained in the summary judgment opinion, Route1 secured patentability by arguing that, "unlike the '216 parent, [the prior art reference] 'Kiwimagi teaches that the remote *takes the initiative*[.]'" (*Id.* at 15.) Then, in litigation, Route1 made the "remarkable argument" that the "prosecution says nothing about how the host establishes a connection to the remote, nor does the prosecution state—or suggest—that the host must somehow initiate a connection to the remote." (*Id.* at 14-15 (internal quotation marks and citations omitted).) Litigants should be deterred from arguing one thing to secure issuance of the claims and then turning around and arguing a position clearly to

the contrary in litigation. Accordingly, when reviewing the totality of the circumstances in this case, I am persuaded that this case warrants the label "exceptional."

Route1 also argues that AirWatch's fee request is unsupported because (1) AirWatch relies on surveys to establish the reasonableness of its attorneys' rates, and (2) AirWatch submitted fully redacted time entries. Although I disagree as to the first point, I agree as to the second and so will reserve decision as to the amount to be awarded.

Route1 argues that AirWatch has not established that its attorneys' rates are reasonable. AirWatch relies on the 2019 American Intellectual Property Law Association Economic Survey Report ("AIPLA Report") and the Valeo 2018 IP Litigation Hourly Report ("Valeo Report") to demonstrate that its attorneys' rates were reasonable. Reliance on those surveys has been held to be an appropriate way to demonstrate that the attorneys' rates "are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000). The AIPLA Report provides that, for partners in the "Other East" region, which includes Delaware, the median rate is $461 and the 90th percentile is $691; for firms with more than 150 intellectual property lawyers and agents, the median rate for partners is $467 and the 75th percentile is $768. As for associates, the AIPLA Report provides that in the "Other East" region, the median rate is $300 and the 75th percentile is $343. The Valeo Report provides rates for the AmLaw 50 firms with intellectual property practices. According to that report, the 2018 hourly rate was $1,145 for senior partners, $979 for partners, $905 for counsel, $729 for senior associates, and $642 for associates.

7

As to the rates charged by Morrison & Forester, I find that the rates charged by partners are reasonable, whereas the rates charged by associates are not. Morrison & Forester charged ▓▓▓ in 2018 and ▓▓▓ in 2019. That is a reasonable rate ▓▓▓ based on the AIPLA Report and the Valeo Report. As for the associates at that firm, an hourly rate of $500 is more reasonable in this district. I find that the paralegal rates are reasonable.

As to the rates charged by ▓▓▓, I find the rates unreasonable for this district. I find that a rate of $691 for partners, the high end of the AIPLA Report, is reasonable. And again, an hourly rate for associates at that firm of $500 is reasonable in this district.

I find that the rates charged by Young Conway are reasonable. The Young Conway partner charged a rate of ▓▓▓ from April 2017 to April 2019 and a rate of ▓▓▓ from April 2019 to August 2019. The Young Conway associate charged a rate of ▓▓▓ from April 2017 to August 2019 and a rate of ▓▓▓ since August 2019.

Route1 objected that to the documentation AirWatch submitted in support of its request for attorneys' fees. In support of its motion, AirWatch filed attorney declarations explaining the timekeepers for whom AirWatch seeks to recover fees and their roles in the case. Attached to the declarations are copies of the invoices that include the date, the timekeeper, the hours billed, and the amount billed, but the services performed are redacted. AirWatch offered to submit unredacted copies of the invoices for *in camera* review by the Court upon request. That is insufficient to demonstrate that the requested fees are reasonable. Route1 should be given an opportunity to appraise the

8

reasonableness of the amount of fees AirWatch requests and present the Court with any legitimate objections to AirWatch's fee request. In order to afford Route1 that opportunity, AirWatch shall turn over to Route1 billing statements that contain sufficient information for Route1 to determine if it has any objections to AirWatch's fee request. AirWatch must submit documentation in support of its request within 14 days, with Route1 having 14 days to comment thereon, and I will then determine whether the fees requested are reasonable and to what extent they should be awarded. The burden of proof is, of course, on those seeking fees.

### IV.   CONCLUSION

For the foregoing reasons, AirWatch's motion for attorneys' fees (D.I. 289) is granted in part. I reserve decision, however, on the amount of fees to be awarded.