IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROUTE1 INC.,

　　　*Plaintiff/Counterclaim*
　　　*Defendant,*

v.

AIRWATCH LLC and VMWARE, INC.,

　　　*Defendants/Counterclaim*
　　　*Plaintiffs.*

C.A. No. 17-331-KAJ



Public Version Filed: July 9, 2020

## ROUTE1 INC.'S SUPPLEMENTAL OPPOSITION TO AIRWATCH'S AND VMWARE'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285

OF COUNSEL:

VORYS, SATER, SEYMOUR AND PEASE LLP

Michael J. Garvin
Marcel C. Duhamel
Aaron M. Williams
200 Public Square, Suite 1400
Cleveland, OH 44114
Phone:  (216) 479-6100
mjgarvin@vorys.com
mcduhamel@vorys.com
amwilliams@vorys.com

William H. Oldach III
1909 K Street N.W., 9th Floor
Washington, DC 20006
Phone:  (202) 467-8800
wholdach@vorys.com

Rex M. Miller, II
52 E. Gay Street
Columbus, OH 43215
Phone:  (614) 464-6400
rwmiller@vorys.com

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

Dominick T. Gattuso (#3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Phone:  (302) 472-7300
dgattuso@hegh.law

*Attorneys for Plaintiff,*
*Route1 Inc.*

## I.    PRELIMINARY STATEMENT

Despite this Court's reminder that AirWatch bears the burden of proving the reasonableness of the fees it seeks to shift to Route1, AirWatch has entirely failed to carry that burden.  The Federal Circuit has made it clear, recently and often, that any fees awarded under 35 U.S.C. §285 must be causally linked to the specific conduct the district court found rendered the case exceptional.  For its part, this Court said in its March 31, 2020 Order that it found Route1's conduct "over the final course of this case" to be exceptional, and linked that finding to specific arguments Route1 made in its opposition to AirWatch's summary judgment motion (which Route1 filed on May 2, 2019).  Nonetheless, AirWatch simply submitted the fees it says it incurred over the entire case.  The Federal Circuit has made it clear, though, that any fees this Court awards must be causally related to the specific conduct at issue.  AirWatch makes no effort to show this causal connection.  That failure of proof should lead this Court to refuse to award any fees at all.

In any event, this Court should confine its analysis to fees incurred after May 2, 2019, the date on which Route1 opposed AirWatch's motion for summary judgment and took the positions that this Court has concluded rendered the case exceptional.  Were it do so, that analysis would reveal that *at most* AirWatch could recover $192,769.01, after deducting from the invoiced[1] amount of ███████ during that period those fees that AirWatch has withdrawn and those fees that AirWatch has not proven were reasonably incurred.

The fees AirWatch seeks are clearly excessive.  This case has been pending just over three years, with most of the activity covered by AirWatch's fee request taking place over roughly two

---

[1]    AirWatch provided Route1 with text-delimited copies of the time entries it submitted through its counsels' declarations in support of its fee request.  (Declaration of Aaron M. Williams (hereinafter, "Williams Decl.") at ¶ 3.)  References in this opposition to "invoiced" amounts refer to those text-delimited time entries for timekeepers for whom AirWatch is seeking reimbursement at this Court's approved rates.  (*Id.* at ¶ 4.)

and a half years.  AirWatch invoiced over ███ hours spent by its counsel on this case.  Assuming a forty hour work week, that is the equivalent of ███ weeks, *or* ███ *years*, devoted *entirely* to this litigation.  That excess should result in a substantial reduction of any award.

## II.    LAW AND ARGUMENT

### A.    This Court Should Award No Fees, But If It Awards Any, It Should Award Only Those Fees Reasonably Incurred After May 2, 2019.

The Federal Circuit has recently, and repeatedly, held that, in the context of fees awarded under 35 U.S.C. §285, "the amount of the award must bear some relation to the extent of the misconduct."  *Rembrandt Techs., LP v. Comcast of Fla/Pa., LP*, 899 F.3d 1254, 1279 (Fed. Cir. 2018) (*quoting Rambus Inc. v. Infineon Techs, AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)).  *See also Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1304 (Fed. Cir. 2019) (reaffirming that "a district court must find a 'causal connection' between the basis for an exceptionality determination and the amount of fees awarded"); *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 745 Fed. Appx. 153, 158 (Fed. Cir. 2018) (affirming award of fees for entire case only after district court had found that exceptional misconduct "permeated throughout the entirety" of the litigation).  While findings of exceptionality must be based on a conclusion that the entire case is "exceptional," it nonetheless remains true that the amount of fees must bear a relationship to the specific conduct underlying that finding.  *See Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019).  Indeed, as the Federal Circuit has put it: "The required scrutiny of what consequences followed from the conduct under the exceptionality determination might lead to reconsideration of whether the case was exceptional in the first place, at least where . . . the exceptionality determination rests on isolated incidents, not overall exceptional weakness on the merits of the entire case or defense."  *Elbit*, 927 F.3d at 1304.

This Court made it quite clear in its ruling that it believes "Route1's conduct ***over the final***

*course of this case* qualifies, in my judgment, as exceptional." Order at 6 (emphasis added). The Court explained that in its view, Route1's conduct in advancing its construction of the term "establish" based on the plain meaning of the term may not, alone, have supported an exceptionality finding. *Id.* Instead, in its view, "what does tip Route1's case into the exceptional category is the contradictory positions it took before the PTO in prosecution and then before me in litigation." That conduct, as the court noted, occurred "particularly by the time claim construction issues were being settled." *Id.* at 4. That did not occur until this Court held its June 26, 2019 hearing, at which it considered summary judgment and the outstanding question of whether additional claim construction was required. At the earliest it occurred when Route1 opposed AirWatch's motion for summary judgment on May 2, 2019.

This Court also correctly observed that: "The burden of proof is, of course, on those seeking fees." *Id.* at 9.

1.  <u>AirWatch Has Failed To Carry Its Burden As To Any Fees</u>

Despite this Court's conclusion that the conduct that it believes makes this case exceptional occurred "over the final course of this case," despite the Federal Circuit's clear direction that any award of fees must be causally linked to the specific conduct that makes the case exceptional, and despite this Court's reminder that AirWatch bears the burden of proof, AirWatch makes no effort even to pretend to limit its fee application to the relevant issues and time period. Instead, it simply presents its counsels' fees *for the entire litigation*, with no effort whatsoever to tie those fees to the conduct this Court identified. That failure of proof more than justifies a refusal to award any fees at all, and this Court should, indeed, decline to award AirWatch's fees under these circumstances.

2.      Were This Court To Award Any Fees, Only Those Fees Reasonably Incurred
        After May 2, 2019, At The Earliest, Should Be Considered.

AirWatch first petitioned the Court to reopen claim construction on March 14, 2019 (D.I.

191), and made claim construction arguments, related to the "establish" term, in its Motion for

Summary Judgment filed on April 18, 2019 (*see* D.I. 201 at 16–17).  Route1 first responded to

AirWatch's request to this Court to reopen claim construction on March 21, 2019 (D.I. 193), and

responded to AirWatch's motion for summary judgment on May 2, 2019 (D.I. 228).  This Court

conducted its hearing on the summary judgment motion on June 26, 2019.

The conduct on which this Court rests its exceptionality determination occurred, at the

earliest, in Route1's response to AirWatch's summary judgment motion[2].  *See* Order at 6 (referring

to "remarkable argument" made by Route1 in summary judgment opposition).  After all, if "what

does tip Route1's case into the exceptional category is the contradictory positions it took before

the PTO in prosecution and then before [this Court] in litigation," it follows that only fees incurred

after Route1 took that litigation position could have been the result of Route1's exceptional

conduct.  It bears repeating that the Federal Circuit requires that any award of fees be causally

linked to the conduct that supports the exceptionality determination.  Thus, May 2, 2019, the date

on which the summary judgment response was filed, is the earliest logical date from which this

Court could award fees, because it is the date on which Route1 advanced the position this Court

characterizes as a "remarkable argument."  A more expansive view arguably could tie the conduct

to Route1's letter briefing to this Court in which it asserted that no additional claim construction

---

[2]      Respectfully, Route1 continues to dispute that its conduct in any way renders this case
"exceptional."  Nonetheless, Route1, of course, recognizes that this Court has held to the contrary.
That ruling, though, binds AirWatch as much as it does Route1; while this Court found that
Route1's conduct rendered the case exceptional, it limited that finding to the specific conduct it
identified in its Order.  Under Federal Circuit precedent, any fees this Court awards must be limited
to those caused by that conduct.

was necessary, although this Court does not cite to that letter briefing as evidence of exceptional conduct.  Route1 submitted that letter on March 21, 2019.

AirWatch, perhaps, might believe some earlier date controls.  If so, it has failed to carry its burden of proof on the issue.  Had it wished to argue that some date earlier than May 2, 2019 is relevant, it should have done so when it submitted its documentation in support of its fee request, after this Court warned it that it bore the burden of proof.  By contrast, Route1 has offered a reasonable basis on which to tie any fee award to conduct causally related to that which this Court concluded makes this case exceptional.   If this Court awards fees, it should do so only for the period after May 2, 2019.

**B.      This Court Should Not Award Fees That AirWatch Has Not Actually Incurred, That Were Not Reasonably Incurred or That Were Unnecessarily Duplicative**

The Federal Circuit applies the lodestar method to calculate attorneys' fees. The lodestar is determined "by 'multiplying the number of hours ***reasonably*** expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008) (emphasis added) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1984)). *See also Lumen View Tech. LLC v. Findthebest.com, Inc*., 811 F.3d. 479, 483 (Fed. Cir. 2016) (applying the lodestar method to 35 U.S.C. § 285).  Hours are not reasonably expended if they are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  *See also*, *e.g*., *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 660 Fed. Appx. 966, 973 (Fed. Cir. 2016) (vacating and remanding fee award where, among other things, "at least some of the billing entries were unreasonable, such as an entry for reviewing answers to interrogatories already served, and an entry for reviewing a court decision when the case was stayed for several years" and where partners performed work that should have been performed at lower rates by associates).  Further, as the

Third Circuit has noted, "a fee applicant cannot demand a high hourly rate – which is based on his or her experience, reputation, and a presumed familiarity with the applicable law – and then run up an inordinate amount of time researching that same law." *Ursic v. Bethlehem* 719 F.2d 670, 677 (3d Cir. 1983). Similarly, the court said, "[n]or do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." *Id*.

As the Third Circuit has observed, in reviewing a fee request, "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." *Evans v. Port Auth. Of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (reversing for abuse of discretion an award of fees where the district court did not conduct required analysis and where multiple instances of unnecessary duplication appeared in the record). The court has also held that "a district court must conduct a 'thorough and searching analysis' to identify whether "hours set out were reasonably expended." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) (*quoting Evans*, 273 F.3d at 362) (reversing where district court failed to conduct a "searching analysis" of the reasonableness of time entries to which opposing counsel objected on the grounds they were excessive).

Generally, at least where a lawyer is not representing a client *pro bono*, fees should not be awarded when the hours are not properly billed to a client. *See Hensley*, 416 U.S. at 434 ("Hours that are not properly billed to one's ***client*** are not properly billed to one's ***adversary*** pursuant to statutory authority") (emphasis original); *see also, e.g., Computer Statistics, Inc. v. Blair*, 418 F. Supp. 1339, 1351 (S.D. Tex. 1976) ("award of attorneys' fees is compensatory and it would be per se unreasonable to have the client receive in attorneys' fees more than he has paid"). Although AirWatch asserts in its Motion that it "has paid its attorneys . . . over ████████ (D.I. 290 at

19), the declarations submitted to this Court do not clearly support that assertion.  First, AirWatch did not submit a declaration of one of its corporate representatives indicating that it has paid any amount of money to its attorneys; the declaration of AirWatch's Brooks Beard is silent on that issue.  The declarations of Young Conaway's Anne Gaza are the only declarations that affirmatively aver that the fees for which AirWatch seeks recovery were actually paid by AirWatch.  (See, e.g. D.I. 324 at 2.)  The declarations of Morrison & Foerster's Richard Hung (D.I. 293 and 322) and Wilmer Hale's Cynthia Vreeland (D.I. 294 and 323), however, make no such representation.  At best, Mr. Hung's Supplemental Declaration implies AirWatch has paid the fees it seeks, but makes no affirmative averment to that effect.  (See D.I. 322 at 4 n.3 ("AirWatch is not seeking to recover that amount as it did not pay those fees.").)  AirWatch, of course, cannot claim compensation for fees it has neither paid nor has agreed to pay; that would be a windfall, not compensation.  Because it is impossible to tell from the evidence AirWatch submits whether it has paid or has agreed to pay Morrison & Foerster or Wilmer Hale as invoiced or, instead, if it has refused to pay or negotiated some discount with respect to any of those invoices, AirWatch fails to carry its burden of proving that fees from either of these firms are recoverable.

In any event, review of the documentation AirWatch submitted reveals considerable inefficiency, unnecessary duplication, and work performed at higher billable rates than necessary.  Those instances are addressed in more detail below, but as an example only, AirWatch seeks to recover fees for *five* lawyers' attendance at this Court's June 26, 2019 summary judgment hearing, at which only two of those lawyers presented argument.  (*See* Ex. A-16.)  *Twelve* lawyers and two paralegals billed ███ *hours* in preparation for that argument, which lasted 147 *minutes*.  (*See id*.)  This is excessive on its face.

7

AirWatch also submits a total of $465,008.13 for which the description reads, in its entirety, "redacted," and another $179,648.15 in which at least some portion of the narrative is redacted.  (*See* Exs. A, B, and C.)  This is improper on its face, as not only Route1 pointed out in its brief in opposition to AirWatch's motion (D.I. 301 at 18–19), but as this Court itself held in its March 31, 2020 Order (Order at 8–9.  This Court should not award any fees whose reasonableness cannot be assessed because AirWatch has chosen not to reveal the purpose for the fee.  Indeed, AirWatch itself acknowledges that, if this Court believes the redactions were inappropriate, then AirWatch withdraws the request for compensation for them.  (D.I. 320 at 2 ("If [*in camera* review] is not available, AirWatch will withdraw its request as to those entries.").)  This Court should not award any portion of these fees, having already ordered AirWatch to submit unredacted fee entries to permit both this Court and Route1 a full and fair opportunity to assess time entries for which AirWatch seeks to bill Route1.

1.   This Court should substantially reduce fees incurred after May 2, 2019, if it awards them at all

AirWatch has submitted invoices totaling ███████ incurred during the period May 2, 2019 through February 28, 2020.  Many of these fees, however, were duplicative, highly inefficient, or otherwise not reasonably incurred.

Exhibit A to the attached Williams Declaration represents a table summarizing some of the narratives AirWatch submitted to this Court for the period May 2, 2019 through February 28, 2020.  Review of those narratives reveals that they can generally be classified into twenty categories, each listed on the exhibit.

a.   *Fees excludable in their entirety*

Several fee categories should be excluded from any award in their entirety; these are reflected in the "Reduction Applied" column as showing a 100% reduction.

First, $8,012.56 appears on invoice entries for which AirWatch has disclaimed any recovery.  *See* Ex. A-1.

Second, AirWatch has also disclaimed any recovery of fees for "Appeal Preparation" (*see* Ex. A-5) and "Reexamination Related Entries" (*see* Ex. A-12).  These entries total ███████

Third, $169,731.33 appear on invoice entries that were redacted either entirely (*see* Ex. A-2) or in part (*see* Ex. A-3).  As discussed above, this Court should decline to award any of these fees.

Fourth, ███████ of entries are reflected in the "Administrative Tasks" category.  These entries are detailed in Ex. A-4, and reveal tasks that should not have been performed by timekeepers at all, or if so, performed by timekeepers at much lower rates, because they were strictly administrative, clerical, or ministerial and required no legal expertise to complete.  *See*, *e.g.*, *Perez v. Perkiss*, 742 F.Supp. 883, 889 (D. Del. 1990) ("Of course, purely clerical or secretarial tasks should not be billed at [even] a paralegal rate, regardless of who performs them"), *quoting Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989).

Finally, twelve of AirWatch's lawyers and two of their paralegals spent ███ hours in meetings, on calls, or otherwise communicating with each other or AirWatch employees or agents (*see* Ex. A-18), as well as simply monitoring email traffic between other attorneys in this case (*see* Ex. A-19), separate and apart from time spent drafting, researching, or preparing for hearings.  This Court should award none of the resulting ███████ in fees, which cannot be said to have been necessarily incurred.

b.    *Fees resulting from excessive staffing or excessive hours*

AirWatch submits ███████ in invoices that fall into the category of "Claim Construction."  (*See* Ex. A-6.)  Many of these entries, however, reflect work that was performed

by a partner or of counsel that could have been performed by an associate or work that took longer than appears reasonable.  Route1 submits that 33% of this time should be deducted from any fee allowance.

AirWatch submits ██████ of invoices, reflecting a whopping ████ hours spent by *nine* timekeepers, associated with briefing its exceptional case motion.  (*See* Ex. A-8.)  This is obviously excessive.  Route1 submits this time should be reduced by 75%; just under ███ hours would have been more than enough time to devote to that briefing effort, and the needless duplication reflected by the fact that nine timekeepers participated in it warrants a significant reduction.

AirWatch lawyers—and two legal assistants—also billed ████ hours, for ███████ preparing for a trial on their invalidity counterclaim even while the parties were engaged in discussions regarding how best to avoid that trial.  (*See* Ex. A-9.)  All or most of this time should be rejected; by the time AirWatch's counsel billed it, it was clear to both parties that a trial on AirWatch's counterclaim would not proceed.

Five timekeepers billed ███ hours, for a total of █████ to prepare for and to pursue the deposition of Mr. Poeluev.  (*See* Ex. A-11.)  AirWatch never cited the resulting deposition for any reason, and this is a testament to its irrelevance.  AirWatch should recover nothing for the taking of this needless deposition.

*Twelve* timekeepers billed a total of ███ hours, rendering ███████ in invoiced fees for preparation of AirWatch's reply in support of its motion for summary judgment.  (*See* Ex. A-13.)  Certainly AirWatch was entitled to file that reply, and Route1 does not contest that such an effort would have taken some time, but this too is excessive.  The use of twelve timekeepers, all but two of whom were lawyers, to draft even a highly complex brief would have been all but certain to

result in unnecessary duplication, and AirWatch's reply was not so complex that it could have justified this degree of engagement from so many lawyers. This Court should reduce this time by 33% to account for this needless duplication.

Oddly, apart from time billed in connection to its reply, seven of AirWatch's lawyers billed an additional ███ hours, for ████████ related to its motion for summary judgment, despite the fact that it had been filed already. (*See* Ex. A-15.) Perhaps these entries are imprecise and were actually related to the reply brief, in which case they should be subjected to the same 33% reduction. If not, they assuredly are clerical or ministerial, but neither Route1 nor this Court should have been left to guess. This Court should award none of these fees, but if it awards any, it should reduce them by 33%.

Fourteen timekeepers also billed a total of ████ hours to prepare for this Court's June 26, 2019 hearing, for a total of ██████████ (*See* Ex. A-16.) That hearing lasted 144 minutes—or two hours and twenty four minutes. Only two lawyers argued it, yet AirWatch seeks to recover fees for five lawyers to attend it—despite the fact that no two lawyers billed the same amount of time to "attend" the hearing. (*See* Ex. A-16 (showing Gaza billed 3.5 hours, Hung billed 3 hours, Jacobs billed 4 hours, Van Nort block billed 5.1 hours, and Wilson billed 3.3 hours).) Both of these claims for recovery are grossly excessive. To be sure, Route1 does not contest that it frequently takes longer to prepare for a hearing than it does to participate in it. It is difficult to see, however, why it would require fourteen timekeepers to prepare two lawyers to argue a hearing, and why the time to prepare would reasonably be ████████ the time to conduct it. The preparation time should be reduced by at least 67%, and this court should not award fees for lawyers who attended a hearing merely to watch it.

11

### c.    *Fees resulting from unnecessary work*

Oddly, AirWatch's lawyers billed ███ hours associated with drafting an opposition to Route1's motion to dismiss the invalidity counterclaim to allow for an appeal from the summary judgment ruling, resulting in █████████ (*See* Ex. A-9.)   AirWatch never filed any such opposition.  Instead, it ***joined*** a request that this Court enter a proposed order in which this Court would have made a Fed.R.Civ.P. 45(b) determination (D.I. 282), and when this Court declined to do so, it stipulated to the dismissal of its counterclaim (D.I. 284).  These fees should be reduced to $0.00, because they were entirely unnecessary.

Similarly, five of AirWatch's lawyers billed over ███ hours, and █████████ in connection with preparing a one-sentence stipulated dismissal (D.I. 284) of its counterclaim.  (*See* Ex. A-8.) This is inexplicable.  AirWatch should recover no more than 25% of those fees (if even that).

### d.    *Summary*

If this Court awards any fees at all, it should award no more than $192,769.01 for this time period after reducing AirWatch's fee request for needless duplication, inefficiency, or work not reasonably performed.

2.    <u>This Court should substantially reduce fees incurred between March 21, 2019 and May 2, 2019, if it awards them at all.</u>

AirWatch demands an additional █████████ incurred between March 21, 2019 and May 1, 2020.  Here too, however, AirWatch's submission reveals a large amount of fees that were not reasonably incurred.

Exhibit B to the attached Williams Declaration represents a table summarizing some of the narratives AirWatch submitted to this Court for the period March 21, 2019 through May 1, 2019. Review of those narratives reveals that they can generally be classified into eleven categories, each listed on the exhibit.

> a.   *Fees excludable in their entirety*

As with the period May 2, 2019 through February 28, 2020, several of those categories should be excluded from any award in their entirety; these are reflected in the "Reduction Applied" column as showing a 100% reduction.  First, AirWatch submits $46,723.45 of entries that are either completely or partially redacted.  (*See* Exs. B-1 and B-2.)  For the reasons discussed in the previous section, this Court should award none of these fees.

Second, AirWatch submits ███████ worth of entries associated with preparing to take the deposition of Poeluev and other cross-border discovery.  (*See* Ex. B-6.)  As discussed in the previous section, this Court should award none of these fees either.

Third, AirWatch lawyers (and one paralegal, who billed 3.8 hours of this time) billed ███ hours, for a total of ████████ engaged in administrative, clerical, or ministerial activities that facially required little legal expertise.  (*See* Ex. B-3.)  This Court should decline to award any of these fees, with the possible exception of those billed by the paralegal.

Finally, in the six week period covered in this section, AirWatch timekeepers billed ████ hours in meetings, on calls, or otherwise communicating with each other or AirWatch employees or agents, as well as simply monitoring email traffic between other attorneys in this case, for a total of ████████ apart from preparing for depositions, drafting, or conducting research.  (*See* Exs. B-9 and B-10.)  Again, as discussed in the previous section, this Court should decline to award any of these fees.

> b.   *Fees resulting from excessive staffing or excessive hours*

AirWatch filed its motion for summary judgment on April 18, 2019 (D. I. 199).  Route1 filed its opposition on May 2, 2019.  Yet, between March 21, 2019 and May 1, 2019, AirWatch billed ████ hours related to summary judgment briefing, for a total of █████████ (*See* Ex. B-

7.)  Again, Route1 certainly does not dispute that briefing a summary judgment motion requires time and legal expense, but this is excessive.  Route1 submits this time should be reduced by 33% to account for the needless duplication that necessarily resulted from the fact that **thirteen** timekeepers billed to this project.

Six lawyers and one paralegal billed ███ hours, for ██████ related to "claim construction" issues during this period.  (*See* Ex. B-4.)  Here too, the number of timekeepers all but assured a degree of unnecessary duplication.  This Court should reduce the requested fee by 15% to account for it.

Perhaps most glaringly, nine lawyers and two legal assistants billed ███ hours to *Daubert* briefing, resulting in invoiced fees of ██████ (*See* Ex. B-5.)  Granted, Route1 filed its own *Daubert* motion on April 18, 2019 (D.I. 198), and AirWatch responded to it on May 2, 2019 (D.I. 222).  Again, however, the matter was clearly over-staffed, and this Court should reduce the resulting fee by 50% to account for that unnecessary duplication.

Lastly, a small 5% reduction to the "unclassified" category of entries is warranted to correct for the 5.8 hours, almost half of which was billed by two partners, to prepare two, non-controversial stipulations.

c.      *Fees resulting from unnecessary work*

AirWatch lawyers, including a partner at Young Conaway, billed ███ hours, yielding ██████ preparing for trial during this period.  (*See* Ex. B-8.)  Trial, however, was not scheduled until December 2, 2019.  Certainly lawyers do not generally wait until the last minute to begin trial preparations, but given that trial was nearly nine months away and summary judgment and *Daubert* briefing was not yet even complete, this work was not colorably necessary at the time. This Court should discount all of it.

14

*d.*     *Summary*

If this Court awards any fees at all for this time period, it should award no more than $206,935.37 after reducing AirWatch's fee request for needless duplication, inefficiency, or work not reasonably performed.

3.     <u>This Court should substantially reduce fees incurred before March 21, 2019 if it awards them at all.</u>

Although fees and expenses incurred before March 21, 2019 are not colorably relevant to this analysis or causally connected to the conduct this Court found "exceptional," AirWatch submitted them nonetheless, forcing Route1 to incur the expense and burden of analyzing them for duplication, inefficiency, and reasonableness. AirWatch was invoiced ███████ during this period. That amount, however, includes more than ██████ in unexplained or unsupported fees and expenses, or in fees and expenses that are duplicative, inefficient, and unreasonable.

Exhibit C to the attached Williams Declaration represents a table summarizing some of the narratives AirWatch submitted to this Court for the period of time prior to March 21, 2019. Review of those narratives reveals that they contain a number of the same issues and deficiencies as the narratives invoiced on or after March 21, 2019.

*a.*     *Fees excludable in their entirety*

As discussed above, there are several categories of time that should be excluded from any award in their entirety.

First, $6,832.50 appear on invoice entries for which AirWatch has disclaimed any recovery. (*See* Ex. C-1.)

Second, $428,202 appear on invoice entries that were redacted either entirely (*see* Ex. C-2) or in part (*see* Ex. C-3). AirWatch has waived any right it may have had to recover any of these fees by submitting redacted time entries.

Third, ████ in ████ appear on invoices for which no information or narrative is provided. (*See* C-15.) As is true with its redacted entries, AirWatch cannot recover unsupported fee requests for which no description is provided.

Fourth, ████ of entries are reflected in the "Administrative Tasks" category. These entries are detailed in Ex. C-4, and reveal tasks that should not have been performed by timekeepers at all, or if so, performed by timekeepers at much lower rates, because they were strictly administrative, clerical, or ministerial and required no legal expertise to complete.

Finally, AirWatch should be precluded from recovering its fees incurred in connection with unsuccessful motion practice before this Court. On September 25, 2017, AirWatch filed a Motion to Stay Pending *Inter Partes* Review (D.I. 23), which this Court denied on October 24, 2017 (D.I. 38). Seven of AirWatch's lawyers billed a combined ████ hours for a total of ████ in connection with this unsuccessful effort. (*See* Ex. C-6.) Similarly, on December 7, 2018, AirWatch filed a discovery dispute letter seeking to compel responses to certain interrogatories. (D.I. 161.) The Court denied this request on December 11, 2018. (D.I. 175.) Five AirWatch attorneys and two paralegals billed a combined ████ hours, totaling ████ in connection with this unsuccessful and unnecessary discovery dispute. (*See* Ex. C-9.) AirWatch did not prevail on these motions and should not now be permitted to recover its fees.

> b.   *Fees resulting from excessive staffing or excessive hours*

Although parties do not "prevail" at the *Markman* stage, AirWatch was largely unsuccessful in obtaining its desired claim constructions. Rather, the Court generally agreed with Route1's positions for those terms on which there was a dispute to settle. (*See* D.I. 85.) In connection with this unfavorable result, seven AirWatch attorneys billed an excessive ████ hours, totaling ████ Of those ████ hours, ████ were billed by partners or counsel.

16

Given the unfavorable result, excessiveness, and inappropriate division of labor, these fees should be reduced by 50%.

While AirWatch is certainly entitled to be represented by the counsel of its choice, Route1 should not bear the cost of AirWatch's strategic decision to transfer this case from Wilmer Hale to Morrison & Foerster. Ten attorneys spent approximately ▉ hours at a cost of ▉ to transition this matter from one firm to the other. (*See* Ex. C-10.) AirWatch should not be permitted to recover these fees. *See*, *e.g.*, *Perez*, 888-89 (declining to award fees incurred to transition case from one attorney to another).

*c.*     *Fees resulting from unnecessary work*

AirWatch's interest in and efforts to pursue discovery from Mr. Poeluev were not limited to the May 2, 2019 or March 21, 2019 periods addressed above. Rather, AirWatch pursued Mr. Poeluev and three other third-party witnesses in Canada starting in April 2018. The Court denied AirWatch's request to issue letters rogatory for two of the witnesses. (D.I. 160.) Those efforts resulted in ▉ billable hours by ten attorneys and one paralegal[3], for a total of ▉ and not a single, useable piece of evidence cited in support of AirWatch's motion for summary judgment. AirWatch should not recover any of these fees. *See*, *e.g.*, *In re Manley Toys, Ltd*, No. 16-15347 (JNP), 2018 Bankr. LEXIS 1899, *8-10 (Bankr. D. NJ June 21, 2018) (refusing to award fees for discovery that was not relevant or necessary).

Similarly, AirWatch deposed a number of fact witnesses—Messrs. Brunetti[4], Hooper,

---

[3]     Given the time periods involved, it is likely attorneys at Wilmer Hale spent time connected to AirWatch's issuance of letters rogatory, but Wilmer Hale's invoices for the relevant time period contained no information or narratives.

[4]     Route1 designated Mr. Brunetti as its corporate representative for the topic "The factual bases for any secondary considerations of non-obviousness of the asserted claims that Route1 intends to rely on in this litigation including, but not limited to praise by others, commercial

17

Hudson, and Malar—none of whom provided any testimony cited in support of AirWatch's motion for summary judgment. Ten attorneys and two paralegals billed ███ hours totaling ███████ in preparing for and conducting the depositions of these largely irrelevant witnesses. (*See* C-11.) To the extent AirWatch is entitled to recovery of these fees, its fees should be reduced by 66%, considering both the excessive amount of time spent in preparation and the tangential (at best) relevance of these depositions to any issue in the case. *See*, *e.g.*, *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 139-40 (3d Cir. 2018) (affirming reduction of deposition preparation time to 1.75 times the hours spent in actual deposition); *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF, 2019 U.S. Dist. LEXIS 105371, *43-45(N.D. Cal. June 24, 2019) (reducing fees spent in deposition preparation where preparation time was excessive in light of total time in deposition). Moreover, thirteen AirWatch attorneys and one paralegal billed ███ hours, for a total of ██████, in connection with other depositions in this case. (*See* C-12.) According to AirWatch's invoices, those other depositions lasted a combined ████ hours. (*Id.*) To the extent AirWatch is entitled to recovery of these fees, its fees should be reduced by 70%. This reduction would reimburse AirWatch for the time spent conducting or defending these depositions, as well as a reasonable 1.75x preparation time.

As with the May 2 and March 21 time periods above, seventeen of AirWatch's lawyers and two of their paralegals spent ████ hours in meetings, on calls, or otherwise communicating with each other or AirWatch employees or agents (*see* Ex. C-7), as well as simply monitoring email traffic between other attorneys in this case (*see* Ex. C-13), separate and apart from time spent drafting, researching, or preparing for hearings. That equates to more than █ *weeks* of forty hours

---

success, and skepticism by experts." (*See* Williams Decl. at Ex. D) Otherwise, Mr. Brunetti was deposed pursuant to Fed. R. Civ. P. 30(b)(1). (*See* D.I. 119.)

each, spent conferring with each other or with the client, apart from performing substantive work. This Court should award none of the resulting ███████ in fees.

Given the excess with which AirWatch litigated this case and questionable necessity of a number of AirWatch's discovery choices, the remaining time entries that Route1 has not classified (*see* Ex. C-14) should be reduced by at least 40% to account for these issues.

        *d.*    *Summary*

If this Court awards any fees at all for this time period, it should award no more than $1,268,249.53 after reducing AirWatch's fee request for needless duplication, inefficiency, or work not reasonably performed.

**CONCLUSION**

For the foregoing reasons, this Court should conclude that AirWatch has failed to prove that it should recover any fees. Alternatively, if this Court finds that some award of fees remains appropriate notwithstanding AirWatch's failure of proof, it should award no more than those fees that were reasonably incurred during the period May 2, 2019 through February 28, 2020. This amount is, at most, $192,769.01.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

OF COUNSEL:

VORYS, SATER, SEYMOUR AND PEASE LLP

Michael J. Garvin
Marcel C. Duhamel
Aaron M. Williams
200 Public Square, Suite 1400
Cleveland, OH 44114
Phone:  (216) 479-6100
mjgarvin@vorys.com
mcduhamel@vorys.com
amwilliams@vorys.com

William H. Oldach III
1909 K Street N.W., 9th Floor
Washington, DC 20006
Phone:  (202) 467-8800
wholdach@vorys.com

Rex M. Miller, II
52 E. Gay Street
Columbus, OH 43215
Phone:  (614) 464-6400
rwmiller@vorys.com

Dated:  July 2, 2020

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Phone:  (302) 472-7300
dgattuso@hegh.law

*Attorneys for Plaintiff,*
*Route1 Inc.*

20